COURT OF APPEALS OF VIRGINIA

Present: Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


LEE TREY BOSTICK
                                              OPINION BY
v.   Record Nos.  2925-95-4 and    JUDGE ROSEMARIE ANNUNZIATA
                  0104-96-4              NOVEMBER 26, 1996

SHANNON T. BOSTICK-BENNETT


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Thomas S. Kenny, Judge

        Peter M. Fitzner (Shoun & Bach, P.C., on
        briefs), for appellant.

        (James B. Toohey, guardian ad litem for
        Savannah Ashley Bostick, on brief).

        No brief or argument for appellee.


     Appellant, Lee Trey Bostick (father), was granted a divorce

from appellee, Shannon T. Bostick-Bennett (mother), on the ground

of adultery.  Following a hearing on father's motion held

September 5 and 6, 1995, the court awarded him sole physical

custody of the parties' minor child (child).  However, the court

denied father's request to remove the child from the state.

     Approximately five weeks after the hearing, father gave

written notice of his intention to relocate to North Carolina

with the child.  On motion of the child's guardian ad litem, a

second hearing on the removal issue was held in November 1995.

The court again denied father's request to remove the child from

the state, finding the circumstances had not changed since its

September ruling.  The guardian ad litem's motion to reconsider

the court's ruling was likewise denied.

Father appeals both the trial court's September and November rulings. We find no error in the trial court's decision to deny father's request to remove the child from Virginia and affirm.

I.

Following the hearing in September 1995, the court awarded sole custody to father and outlined a specific and extensive visitation plan for mother. The court found the case to be a close one. With the exception of two statutory factors, it found the evidence on custody in equipoise.

First, the court found that the "degree of stability" mother could provide the child was not equal to that which father could provide. See Code § 20-124.3(3). While the court found that mother had "remarkable" success in establishing a home and a good relationship with the child, notwithstanding "very difficult" circumstances, it expressed concern about the nature and uncertainties of her job and about her "unrealistic" plans for caring for the child while she worked. The court found that father could provide the child a more stable, structured environment.

Second, the court found mother more likely than father to actively support the child's contact and relationship with the other parent. See Code § 20-124.3(6). The court stated that father's efforts, "[w]ith very limited exceptions," were focused on curtailing mother's access to the child. It found that father

had unfairly obtained an ex parte custody order before the custody hearing to retrieve the child from Kentucky where mother had taken the child with father's prior acquiescence.[1] The court also took particular note that father had willingly incurred expenses totalling approximately $30,000 to employ a private investigator "to spy on every visitation that [mother] had with her daughter." The court described the intensity of father's surveillance efforts as "outrageous." It found that father was focused, not on assuring the safety of the child, as he professed, but on "winning" the case at the expense of wife's privacy. The gravity and materiality of the court's concern on this issue is underscored by the court's statement that its finding was nearly sufficient to result in an award of custody to mother.

Nonetheless, the court found it in the best interests of the child to award sole custody to father on the ground that father could provide a more stable environment. However, the court denied father's request to remove the child from Virginia and relocate her in North Carolina. As its reason, the court stated, "I want both parents to be involved, actively, in the life of this child, and I want that involvement on a regular basis. Perhaps because you are such different people . . . I want you

---

[1] In his August 1995 report, the guardian ad litem found that father had made "substantial misrepresentations" as to the parties' agreement concerning mother and the child's departure in order to obtain the ex parte order.

both to be actively involved on a regular basis as she is growing up." The court further ordered the parties to give thirty days' notice of any intention to relocate, stating that the child was not to be removed from the state if an objection was noted.

At the November hearing upon his notice to relocate, father's evidence established that he had "developed a concrete plan for his relocation to North Carolina." The plan included a job offer with Blockbuster in Charlotte, North Carolina, as an assistant manager, with benefits and potential for advancement, but at a yearly salary $2500 less than his earnings in Northern Virginia. Father testified that the lower cost of living in Charlotte would mitigate the effects of a lower salary. He had rented a home near Charlotte, which he planned to share with his mother and brother, and proposed a visitation schedule which would allow, inter alia, mother to take the child one week a month. He proposed that the parties meet half way between Charlotte and Northern Virginia to transfer the child. Father reasoned that his plan would allow mother more time with the child and would cut down on the cumulative miles driven in accommodating the visitation schedule.

At the November hearing, there was also evidence that, shortly after the September hearing, mother had lost her place of residence for failure to pay rent, had incurred increased debt, had lost her job, and had missed several visits with the child because she could not afford to repair her vehicle or purchase

another.  The evidence also showed that mother had recently remarried and that her spouse was a marine stationed at Quantico, Virginia, where they expected to reside for the foreseeable future; that mother was pregnant; and that the couple had obtained financial counseling and were making efforts to stabilize their financial situation.  The court stated that it was "very impressed" with mother's new husband.  On balance, the court found that since the September hearing, mother's life "really has become much more stable."

At the November hearing, the guardian ad litem endorsed father's proposal to relocate.  He considered the relocation of one of the parents inevitable and approved father's plan for relocation which, unlike the one presented at the initial hearing, was concrete.  The guardian ad litem considered the relocation to be in the child's best interest because it would allow her to spend more time with her mother and would reduce the total number of miles driven per month.

Following the November hearing, the court again denied father's request to relocate, finding that father had failed to prove a change in the circumstances material to the issue of the child's removal from the state.  It reaffirmed the findings it made at the September hearing and, reiterating its reason for denying father's motion to remove the child at the earlier hearing, stated:  "Although I gave father custody . . . I also ruled that it was important that both parents participated fully

in [the child's] life and as a result of that I gave liberal visitation to [mother] and I refused [father] permission to move [the child] to North Carolina."

The court likewise denied the guardian <u>ad</u> <u>litem's</u> motion for reconsideration in an opinion letter dated November 22, 1995.  In that letter, the court stated, "I remain convinced that if [the child] is removed to North Carolina, the likelihood is high that [father] will not foster a good relationship between [the child] and her mother.  He does not do it here, and there is no reason to believe that he will do it 350 miles away.  The converse is not true -- if [the child] stays here with her mother, [mother] is much more likely to foster a good relationship between [the child] and her father."  The court also noted that it would award custody to mother if father chose to relocate.

## II.

"A court may forbid a custodial parent from removing a child from the state without the court's permission, or it may permit the child to be removed from the state."  <u>Scinaldi v. Scinaldi</u>, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986) (citing <u>Carpenter v. Carpenter</u>, 220 Va. 299, 302, 257 S.E.2d 845, 848 (1979); <u>Gray v. Gray</u>, 228 Va. 696, 698-99, 324 S.E.2d 677, 678 (1985)).  <u>See also</u> Code § 20-107.2 (granting court power to make decree "concerning the custody or visitation and support of the minor children of the parties"); <u>Simmons v. Simmons</u>, 1 Va. App. 358, 362, 339 S.E.2d 198, 200 (1986).  It is well settled that

the child's best interest is the criterion against which such a decision must be measured. E.g., Scinaldi, 2 Va. App. at 573, 347 S.E.2d at 150. Such a decision is a matter of discretion to be exercised by the court, and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed. E.g., Carpenter, 220 Va. at 302, 257 S.E.2d at 848. Finding no abuse of discretion in this case, we affirm the trial court's decision.

A.

At the initial custody hearing, the trial court clearly addressed the reasons for its finding that the child's best interests would be met by denying father's request to remove her to North Carolina. While the court found neither parent to be unfit, weaknesses in each party's ability to parent raised serious concerns on the part of both the guardian ad litem and the court. The court was manifestly concerned about father's "intense need to prove mother unfit" and about his efforts to limit mother's access to the child. In underscoring the seriousness of its concern, the court noted that evidence of father's motivation had made the question of custody a close one, nearly tipping the balance in mother's favor.

While the court awarded custody to father, it considered the evidence of father's efforts to minimize mother's access to the child in denying father's request to remove the child from the state. In denying the motion, the court specifically noted

father's efforts to limit mother's access to the child and emphasized the need to assure mother's regular, active involvement with the child.

The evidence supports the trial court's conclusion at the September hearings that the beneficial relationship between the child and her mother would not be maintained and would be placed at risk were father allowed to remove the child to North Carolina. In light of this evidence, we find no abuse of discretion in the trial court's initial decision to deny father's request to remove the child. See Scinaldi, 2 Va. App. at 575, 347 S.E.2d at 151 ("[T]he added difficulty in maintaining a beneficial relationship between a child and a non-custodial parent should not be the sole basis for restricting a custodial parent's residence except where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent").

### B.

Within weeks of the trial court's initial determination, father filed a notice of intention to remove the child to North Carolina. "Code § 20-108 permits the court to revise and alter a prior decree concerning the custody of children and to make a new decree concerning the same as the circumstances of the parents and the benefit of the children may require." Simmons, 1 Va. App. at 362, 339 S.E.2d at 200. Father did not seek modification of the court's custody determination; rather, he requested the

court to modify that part of its decree which denied his request to remove the child from the state. This Court has not addressed the standard that must be met before a court's decree regarding removal may be modified.

However, we find such circumstances analogous to those in which a litigant seeks to modify any other decree concerning custody or support. In such cases, before evaluating whether to modify a decree, the court must initially find a "material change in circumstance." See Turner v. Turner, 3 Va. App. 31, 35, 348 S.E.2d 21, 23 (1986); Hughes v. Gentry, 18 Va. App. 318, 321-22, 443 S.E.2d 448, 450-51 (1994); Hiner v. Hadeed, 15 Va. App. 575, 579, 425 S.E.2d 811, 814 (1993). "In the absence of a material change in circumstance, reconsideration . . . would be barred by principles of res judicata." Hiner, 15 Va. App. at 580, 425 S.E.2d at 814.

In cases involving the modification of a custody decree, once the threshold finding is made, the court must evaluate whether a change in custody would be in the best interests of the child. Hughes, 18 Va. App. at 321-22, 443 S.E.2d at 450-51. As stated above, the best interest of the child is the determinative factor in deciding whether to allow a custodial parent to remove the child from the state. E.g., Simmons, 1 Va. App. at 362-63, 339 S.E.2d at 200. Accordingly, we find the best interest of the child is the criterion upon which a decision denying the removal of a child may be modified, once the threshold finding of change

in circumstances is made. Thus, to modify a decree denying a custodial parent permission to remove the child from the state, the court must find (1) a material change of circumstance since the initial decree; and (2) that relocation would be in the child's best interests. In accordance with our prior decisions, the moving party bears the burden of proof. See, e.g., Hughes, 18 Va. App. at 322, 443 S.E.2d at 451.

At the November hearing on the motion of the guardian ad litem, father sought to prove a change of circumstance that would merit his relocation with the child. The evidence showed that, since the initial hearing, father had developed a more concrete plan for his relocation to Charlotte. No other aspect of father's situation had changed. The court ruled that the increased certainty in father's relocation plan was not a change in circumstance material to its prior determination of the child's best interests. The ruling is not plainly wrong or without evidence to support it.

While father had developed a more concrete plan to relocate, the record does not support his contention that this issue was determinative in the trial court's initial refusal to permit him to remove the child to North Carolina. The evidence shows that the court's determination of the best interest of the child was premised on credible evidence concerning the need to stabilize the child and to stabilize, foster and preserve the relationship between mother and child. The court specifically found that, in

light of father's behavior, these goals would not be achieved if father were permitted to remove the child to North Carolina. Implicitly, the court concluded that the best interest of the child would be served by denying father's request.

A change in circumstance material to the best interests of the child in the case at bar would have borne some relation to the reasons for the trial court's initial decision denying the removal. That decision was premised on the notion that mother, although struggling, was not unfit and should actively participate in the child's upbringing. The court refused to allow father to remove the child because it was concerned that father would weaken the mother-child bond. There is no evidence in the record that the circumstances concerning father's willingness to foster and maintain the mother-child relationship had changed since the court's initial determination only two months earlier. Moreover, there is no evidence that mother had become unfit since the first hearing or that having mother participate in the child's life was no longer in the child's best interest. Thus, the change in father's circumstance was not material to the court's determination of the child's best interest.

Accordingly, we find the trial court did not abuse its discretion and we affirm the decree.

<u>Affirmed.</u>