COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Humphreys and Senior Judge Willis
Argued at Alexandria, Virginia


AMER SAMMAN

MEMORANDUM OPINION[*] BY

v.      Record No. 1577-04-4          CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        MARCH 15, 2005

HEATHER SHARISSE STEBER


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

Peter M. Fitzner (Matthews, Snider, Norton & Fitzner, on brief),
for appellant.

Edna Ruth Vincent (Sarah Louppe; Colten Cummins Watson &
Vincent, on brief), for appellee.


    Amer Samman (husband) contends the trial court erred in awarding sole custody of the

parties' minor child to Heather Sharisse Steber (wife).  Finding no error, we affirm.

BACKGROUND

    When reviewing a trial court's decision on appeal, we view the
    evidence in the light most favorable to the prevailing party,
    granting it the benefit of any reasonable inferences.  That principle
    requires us to discard the evidence of the appellant which conflicts,
    either directly or inferentially, with the evidence presented by the
    appellee at trial.

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (internal citations and

quotations omitted).

    So viewed, the evidence established that husband and wife were married on January 2,

1994 and had one child, Z.S., who was born on June 22, 2002.  The parties separated on

---

    [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

November 19, 2003 when wife moved to Centerville, Tennessee with Z.S. Husband and Z.S. are dual citizens of the United States and Syria.

Wife moved to Centerville, Tennessee because she feared her husband. Before the date of separation, wife discovered husband had rented an apartment near the marital home and was having an affair with a co-worker. There were allegations of physical and mental abuse by husband toward wife. These culminated the night before she left for Tennessee when husband threatened to take Z.S. to Syria and to move all the marital assets there. The threats continued when husband took wife and Z.S. to the airport the next day and by telephone when wife was in Tennessee. Once in Tennessee, wife notified the State Department pursuant to instructions on their website to "flag" the passports of husband and Z.S. After a threatening phone call in December 2003, wife obtained an order of protection against husband in Tennessee. However, even after that order was issued, she allowed husband to visit Z.S. in her parents' home approximately five times between mid-January and March 20, 2004. At the March 20, 2004 visitation, husband accused wife of sexually abusing Z.S., an allegation he later acknowledged to be false. Husband did not request any visitation after that day.

At trial, husband's therapist, Dr. Mary Sara, described him as having an adjustment disorder with depressed mood, and she referred him to anger management therapy. However, at the time of trial she was unable to give a complete diagnosis of his mental health. When asked if husband was fit to be with his son, Dr. Sara said that he was, but did not express any opinion about custody.

Kathleen Ruckman, Esq., an employee of the National Center for Missing and Exploited Children (Center), was qualified as an expert in the field of international child abductions. She testified the Center had been involved in eight Syrian abduction cases, but had only effectuated

one recovery.  She also testified about a variety of measures that may help prevent an abduction

or facilitate a recovery.

The trial judge found as follows:

> Let me say first that the case before the Court today is an initial
> custody case, and so technically, anyway, it is not a relocation
> case.
>
> Nevertheless, I'm mindful and of course, guided by the revisions in
> 20-124.2(b) which requires the Court in appropriate circumstances
> to assure frequent and continuing contact with both parents.  And
> of course it's within that, that of a writing framework, that I have
> to determine what's in the best interest of [Z.S.], and in doing so I
> consider all of the factors in 20-124.3.
>
> Really there isn't a lot of dispute really about the facts of the case.
> The difficulty in this case is the determination of what the
> undisputed facts really mean for [Z.S.'s] well being.
>
> > \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> Both parents have maintained, to the extent they've been able to in
> this contentious situation, a positive relationship with [Z.S.].  And
> while [husband] hasn't seen [Z.S.] as much as he would like to
> have, [sic] I conclude from the evidence that the relationship he's
> had with [Z.S.] has been a good one.  I believe that both parents
> love [Z.S.].  While he's only two years old, the evidence is clear
> that [wife] has been the primary care giver and therefore I think
> has accurately assessed and met the emotional and intellectual and
> physical needs of [Z.S.] to a greater extent than [husband] has.  But
> I really don't doubt that [husband] has the ability to meet the needs
> of [Z.S.] even though he's not played an overwhelming role in
> [Z.S.'s] life so far.
>
> [Wife] has, apparently from the evidence, has supported [sic], to
> the extent she's been able to within the difficulties of this case,
> [Z.S.'s] contact with [husband].  And she has also worked to teach
> [Z.S.] about [husband's] heritage and she's promoted [husband's]
> culture and the contact with [Z.S.].  [Husband] really hasn't had a
> chance to do that under the circumstances of this case.
>
> > \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> But the issue in this case really is the fact that [husband] has made,
> on more than one occasion, a threat to abduct [Z.S.], to remove
> him to the country of Syria, which is a country that is not a

signatory of the Hague Convention and is a country that does not observe U.S. law or U.S. Court orders with respect to custody.

And that's the overriding issue in the case, what is the significance of those threats that [husband] admits that he made.

\* \* \* \* \* \* \*

The threats to abduct are manifestations of anger. [Husband's] brother acknowledged that [husband] has an anger problem, his therapist acknowledged it, he, I believe, acknowledges it. I think he understands he has a problem with it. He's seeing both a counselor for it as well as a specialist in anger management. But, clearly, [husband] has an inability to control his anger and his impulses and it's resulted in his making the threats and it gives the Court concern that it may result also in his actual carrying out of the threats.

I was particularly struck by Dr. Sara's testimony that she has not made a diagnosis regarding [husband's] psychological health, his personality. And that concerns me greatly. I specifically asked her about it and she equivocated in the answer, and I wasn't sure whether she simply doesn't know or wasn't prepared to give the testimony. But in any event, my conclusion from that is that she is unsure about the status of [husband's] mental health. And the Court is accordingly unsure.

The trial court ordered sole custody to wife, with twice monthly, supervised visitation, at alternating locations. Husband was also ordered to surrender his and Z.S.'s passports, enjoined from obtaining duplicates or replacements, and required to post a $75,000 cash bond. He appeals from that ruling.

ANALYSIS

I.

Husband first contends that the trial court erred by failing to treat Z.S.'s custody determination as a relocation case. We agree with the trial court that this case is an initial custody determination rather than a relocation issue. While noting that the case was "an initial custody case and so technically, anyway, it is not a relocation case," the trial court discussed the requirements of Code § 20-124.2(b). Further, husband's counsel conceded, "[I]t's not, strictly

- 4 -

speaking, a relocation case in the classic sense." Thus the trial court properly considered this as an initial custody determination guided solely by the best interest of the child. See Petry v. Petry, 41 Va. App. 782, 790, 589 S.E.2d 458, 462 (2003).

II.

Husband next argues that the trial court erred in allowing the testimony of Kathleen Ruckman, Esq., as an expert in the field of international child abduction.

"It is . . . 'well established that the admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion.'" Pelletier v. Commonwealth, 42 Va. App. 406, 418, 592 S.E.2d 382, 388 (2004) (quoting Patterson v. Commonwealth, 3 Va. App. 1, 11, 475 S.E.2d 261, 291 (1986)). "An expert's testimony is admissible not only when scientific knowledge is required, but when experience and observation in a special calling give the expert knowledge of a subject beyond . . . common intelligence and ordinary experience." Id. (internal citations and quotations omitted).

Code § 8.01-401.1 states in relevant part:

> In any civil action any expert witness may give testimony and render an opinion or draw inferences from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify. The facts, circumstances or data relied upon by such witness in forming an opinion or drawing inferences, if of a type normally relied upon by others in the particular field of expertise in forming opinions and drawing inferences, need not be admissible in evidence.

"It is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Piatt v. Piatt, 27 Va. App. 426, 435, 499 S.E.2d 567, 571 (1998) (citing Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc) (citing Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986))).

The trial court did not abuse its discretion by qualifying Ms. Ruckman as an expert. The record established that she had previously been qualified as an expert on prevention of international child abduction in the courts of Virginia and Delaware, before the Indiana State Legislature, and the Senate Judiciary Committee. She was a U.S. delegate to meetings at the Hague Permanent Bureau and a presenter on International Child Abduction at the U.S.-Belgium Conference and the Biennial Conference of Australian Hague Central Authorities. Additionally, husband agreed to her credentials.

| | |
|---|---|
| THE COURT: | Do you have any questions regarding her qualifications? |
| [HUSBAND'S COUNSEL]: | As what? That's what I don't understand. |
| THE COURT: | As an expert in the law of international abductions is what I understand. |
| [HUSBAND'S COUNSEL]: | An expert in the law of international abductions? |
| THE COURT: | Correct. This would be your opportunity to voir dire her credentials. |
| [HUSBAND'S COUNSEL]: | No, I don't need to voir dire her on that issue, Your Honor. |

Husband's only objection at trial was that she had no personal knowledge of husband or his background. The trial court overruled that objection and accepted her as an expert in the law of international child abduction. Ruckman then testified about the risk factors typical to international abductions, such as the youth of the child, the child's dual citizenship, threats to abduct from the husband, husband's ties to the foreign country and his level of support there. She also listed measures to prevent international abductions, such as taking passports, sole custody, precise and clear visitation arrangements, supervised visitation and cash custody bonds.

The trial court properly considered this expert testimony based on the husband's stated threats to abduct the child to a country that "does not observe U.S. law or U.S. court orders with respect to custody."

## III.

Next, husband contends the trial court erred in finding that Dr. Sara, his treating therapist, failed to make a diagnosis of husband's mental health. When discussing her assessment of appellant, Dr. Sara stated, "I looked on the second axis for a personality disorder and deferred diagnosis on that." The court asked her what she meant, and she said,

> Typically if you work with somebody and there's a personality disorder it takes more time to become apparent than, let's say within the first five or six visits when you make a tentative five axis diagnosis. So, I deferred axis to ---- last night in reviewing my notes for the case I looked through the axis two diagnosis and still would say it was either deferred or not present.

The trial judge, in her decision, stated,

> I was particularly struck by Dr. Sara's testimony that she has not made a diagnosis regarding [husband's] psychological health, his personality. And that concerns me greatly. I specifically asked her about it and she equivocated in the answer, and I wasn't sure whether she simply doesn't know or wasn't prepared to give the testimony. But in any event, my conclusion from that is that she is unsure about the status of [husband's] mental health. And the Court is accordingly unsure.

The evidence supports the trial court's finding that Dr. Sara's testimony was insufficient to adequately address husband's mental health and ensure a safe environment for Z.S. This was properly considered as a factor in its custody determination.

## IV.

Lastly, husband contends the trial court erred in awarding sole custody of child to wife. We disagree.

- 7 -

On appeal, a trial court's decision will not be reversed "unless there has been a clear abuse of discretion." Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997); see also Gottlieb v. Gottlieb, 19 Va. App. 77, 84, 448 S.E.2d 666, 671 (1994). "A trial court . . . abuses its discretion by failing 'to consider the statutory factors required to be part of the decisionmaking process,' Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (citing Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997)), or by making 'factual findings that are plainly wrong or without evidence to support them,' id. (citing Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002))." Petry, 41 Va. App. at 790-91, 589 S.E.2d at 462.

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

> In reaching a decision on the best interests of the child, the court is guided by Code § 20-124.3, which specifies a myriad of factors appropriate to the issues of custody and visitation. However, as long as the trial court examines the factors, it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors. The trial court's determination of the child's best interests is a matter of discretion . . . , and, unless plainly wrong or without evidence to support it, the court's decree must be affirmed.

Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (internal citations and quotations omitted), see also Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 323 (1996).

Husband contends the trial court failed to address wife's relocation to Tennessee and, therefore, failed to examine the best interests of the child. We disagree. The trial court specifically stated that in determining custody and visitation, it considered "all the factors of [§] 20-124.3." The trial court heard extensive testimony about Z.S. and his interaction with both

- 8 -

parents. It clearly considered the living situation of wife and her family support system as well as husband's living situation. The final visitation arrangement split the costs of travel and provided for a reasonable amount of time with the non-custodial parent.

Husband's reliance on Petry is misplaced. We held in that case that the standard to be applied when there has not been a final custody and visitation order is the best interests of the child.

> When a trial court has entered a final custody and visitation order, it cannot be modified absent (i) a showing of changed circumstances under Code § 20-108 and (ii) proof that the child's best interests under Code § 20-124.3 will be served by the modification. When no such order has been issued, the court must only examine the best interests question.

41 Va. App. at 789-90, 589 S.E.2d at 462.

In the instant case, ample evidence supports the trial court's determination to give mother sole custody. The trial judge was "not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Sullivan, 38 Va. App. at 783, 568 S.E.2d at 435 (internal citations and quotations omitted), see also Bostick, 23 Va. App. at 533, 478 S.E.2d at 323.

The court's main concerns, husband's continued threats to take Z.S. to Syria and his acknowledged anger issues, are valid considerations. The trial court clearly determined that "the overriding issue . . . is the significance of those threats that [husband] admits that he made." While considering all of the required factors, the trial court determined the safety of the two-year-old child was paramount. Additionally, the trial court devised a visitation schedule[1] that was reasonable under the circumstances and awarded sole custody to wife. The trial court evaluated the distance that separated the Z.S. from husband and split the time and cost of travel

---

[1] Husband has twice monthly supervised visitation, once in Tennessee and once in Northern Virginia, and after the first four months that visitation is to be overnight.

equally between the parents.  The trial court's analysis sufficiently reflects its consideration of the factors set out in Code § 20-124.3 and we, therefore, cannot say that there was an abuse of discretion.

V.

Wife requests an award of attorney's fees for expenses incurred in defending this appeal. Considering the entire record in this case, we find that wife is entitled to reasonable attorney's fees and costs incurred in this appeal.  Accordingly, we remand to the trial court to determine an appropriate award of attorney's fees and costs incurred in this appeal, including any attorney's fees and costs incurred at the remand hearing, and any reasonable attorney's fees and costs of collection, if necessary.

Based on the foregoing, we affirm the judgment of the trial court, but remand for an award of attorney's fees.

<u>Affirmed and remanded.</u>