UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Russell and Malveaux
Argued at Lexington, Virginia

LORETTA ROBERTS-BOND

v.      Record No. 0770-16-3

HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT

                                                            MEMORANDUM OPINION[*] BY
                                                            JUDGE WILLIAM G. PETTY
T.T.A.C., A MINOR,                                          DECEMBER 20, 2016
 BY HER COURT-APPOINTED ATTORNEY

v.      Record No. 1159-16-3

HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT


                    FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                            Thomas J. Wilson, IV, Judge

            Sheila Keesee Paladino (Sheila Keesee Paladino, PLLC, on brief),
            for appellant Loretta Roberts-Bond.

            Stephen R. Sofinski (Stephen R. Sofinski, PLLC, on brief), for
            appellant T.T.A.C., a Minor, by her Court-Appointed Attorney.

            Kim Van Horn Gutterman, Assistant County Attorney; Anne
            Mauldin Convy, Guardian *ad litem* for the infant child, for
            appellee.


     Loretta Roberts-Bond and T.T.A.C. ("the child"), a minor, by her court-appointed

attorney, appeal the Child in Need of Services Dispositional Order and the foster care plan with

the goal of adoption.[1] On appeal, Roberts-Bond presents the following assignments of errors:

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] For purposes of this opinion, the Court has consolidated the cases of Loretta
Roberts-Bond and T.T.A.C. The facts of both cases are identical, the issues on appeal are the
same, and the resolution of each case is the same. Appellants will be referred to as
Roberts-Bond.

(1) The Trial Court erred in finding that low self-esteem and an assumed insecure attachment of nine-year-old [child] to her sole caregiver satisfied the statutory definition of a Child in Need of Services (CHINS) as set forth in Virginia Code § 16.1-228, particularly in light of the custodian's initiation of and cooperation with treatment services prior to the filing of the petition.

(2) The Trial Court erred in finding that the goal of adoption was consistent with the best interests of the Child in light of testimony from the Child's therapist that termination of the Child's relationship with her sole caregiver and long-term custodian would be detrimental to the Child.

For the following reasons, this Court affirms the trial court.

## I. BACKGROUND

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "[W]e view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 17 (1991).

Roberts-Bond became the child's primary caregiver when the child was five months old. In July 2011, when the child was four, Roberts-Bond obtained legal custody. From April 2011 to February 2015, Roberts-Bond failed drug tests or admitted to using cocaine on at least eleven occasions; at one point, Roberts-Bond admitted to daily cocaine use.

Because of Roberts-Bond's drug use, the child has been separated from Roberts-Bond on at least four occasions. Harrisonburg-Rockingham Social Services District ("HRSSD") removed the child and placed her in foster care on two occasions. Both times, HRSSD returned the child to Roberts-Bond on trial home placements. On the final separation, the child was placed in the care of a prior foster mother pursuant to an entrustment agreement negotiated by HRSSD.

While the child was in the custody of the foster mother, HRSSD filed a CHINS petition over concerns about the child's emotional stability if removed from the foster mother and subsequently separated from Roberts-Bond again. The trial court found that the child was a CHINS and approved the foster care plan with the goal of adoption.

## II. CHILD IN NEED OF SERVICES (CHINS)[2]

Roberts-Bond argues that low self-esteem and assumed insecure attachment do not meet the definition of a CHINS because she initiated treatment services. We disagree.

"While we review the trial court's interpretation of a statute *de novo*, we will not disturb the trial court's factual findings on appeal unless they are plainly wrong or without evidence to support them." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 110, 684 S.E.2d 219, 220 (2009) (internal citations omitted).

Code § 16.1-228 defines a child in need of services as "a child whose behavior, conduct or condition presents or results in a serious threat to the well-being and physical safety of the child." The Code, however, limits the definition of a CHINS by providing that:

> (i) the conduct complained of must present a clear and substantial danger to the child's life or health or to the life or health of another person, (ii) the child or his family is in need of treatment, rehabilitation or services not presently being received, and (iii) the intervention of the court is essential to provide the treatment, rehabilitation or services needed by the child or his family.

Code § 16.1-228. Once a child is adjudicated a CHINS, Code § 16.1-278.4(6)(c) permits the court to transfer legal custody to the local board of social services.

"In *any* case in which . . . (ii) legal custody of a child is given to a local board of social services or child welfare agency, the local department of social services or child welfare agency

---

[2] HRSSD used Code § 16.1-278.4 (the CHINS statute) because the child was not in the care of Roberts-Bond at the time of the CHINS petition and therefore not at risk of abuse and neglect as defined by Code § 16.1-228. Pursuant to the entrustment agreement, the child was in the care of the foster mother.

shall prepare a foster care plan for such child, . . . ." Code § 16.1-281(A) (emphasis added). Although CHINS is only mentioned in the time frame section of the statute related to foster care plans, Code § 16.1-281(C) expressly requires a court to hold a hearing review and approve a foster care plan within 60 days of adjudication under Code § 16.1-278.4 (the CHINS statute). Thus, this requirement extends to children in foster care under the CHINS statute.

In each foster care plan, the local board of social services is required to designate a permanent plan goal. Code § 63.2-906(B). Finalizing the adoption of a child in foster care is a permissible plan goal. Code § 63.2-906(B)(3).

Here, the evidence, viewed in the light most favorable to HRSSD, supports the trial court's finding that the child is a CHINS. Specifically, the trial court heard expert testimony that the child's self-esteem was so low she could not identify anything positive about herself, that she talked about wanting to hurt herself, and that she wished she was dead. Although the child outwardly appeared to cope, the therapist testified that the child internalized her feelings and was struggling. The therapist expressed concerns about the child's emotional stability and current risk of self-destructive behaviors such as cutting, drugs, and sexual promiscuity.

The therapist attributed the child's mental condition to inconsistency in primary caregivers due in part to the frequent removals caused by Roberts-Bond's drug problems. The therapist testified that the child was at a "tipping point," another break in attachment—from *either* Roberts-Bond or the foster mother—would be equally negative and catastrophic to the child's already fragile emotional stability.

Roberts-Bond has been using drugs since 1985. To her credit, she has demonstrated both a willingness to obtain treatment for her drug problem and to get the child into therapy. Despite treatment, however, Roberts-Bond tested positive for cocaine or admitted using cocaine eleven times between 2011 and 2015, causing the child to be removed from her home four times. At the

time of the petition hearing, Roberts-Bond had remained sober for eleven months. While "[n]o one can divine with any assurance the future course of human events . . . , past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990)). Roberts-Bond's past shows an extensive history of relapsing, including a relapse after a sixteen-month period of sobriety. Moreover, we are bound by the trial judge's factual finding that there is a concern for loss of sobriety because Roberts-Bond still experienced cravings, self-treated instead of obtaining treatment,[3] and moved out of a drug shelter that provided accountability through drug testing only nine days earlier.

Roberts-Bond's drug problems, and the resulting incarcerations and treatment periods, are the very cause of the child's mental issues. Consequently, the trial court found that the child needed services that provided stability.[4] The court determined that foster care was the service that would provide stability, and because Roberts-Bond could withdraw her consent to the current placement with the foster mom, it was essential for the court to intervene and transfer custody of the child to HRSSD. Transferring custody of a CHINS to a local board is expressly permitted by Code § 16.1-278.4.

Roberts-Bond contends that the statute is not met because the child's therapist testified that the child was not in need of more extensive therapy than that which Roberts-Bond had voluntarily initiated. The therapist, however, expressed concern that she "ha[d] spent significant

---

[3] Despite a history of treatment and recent inpatient treatment, at the time of the hearing, Roberts-Bond was only receiving counselling twice a month. She was not a member of Alcoholics Anonymous or Narcotics Anonymous, and she testified she was working through the steps alone and without a sponsor.

[4] Because the entrustment agreement was not included in the record, we do not know the services provided pursuant to the entrustment agreement.

attention [on the child's insecurity] and seen little progress . . . ." Furthermore, Roberts-Bond testified that she did not have time to do the five-minute daily homework to address the child's attachment issues. The court found that the child needed the permanent stability that could only be found through continuing the foster care placement with the foster mother. Roberts-Bond argues foster care is not a service. But foster care placement is a service by its very nature; the foster parents provide daily care, supervision, and other required services.[5] Furthermore, HRSSD could provide, through foster care, needed treatment not otherwise available.

Roberts-Bond argues that this interpretation of the CHINS statute results in adoption being the preferred result of a CHINS petition. We disagree. Code § 16.1-281(A) expressly requires HRSSD to recommend a foster care plan. Adoption is only one of seven permissible goals of a foster care plan. Code § 63.2-906(B). There is nothing to suggest that the choice of adoption as the goal in this case will result in adoption being the preferred goal in other cases. In fact, in cases involving the legal parent, parental rights would need to be terminated before an adoption could proceed. See Code § 16.1-283. Moreover, such an argument ignores the fact that HRSSD previously attempted two trial return home placements—and each time HRSSD had to remove the child again.

Viewing the evidence in the light most favorable to HRSSD, we cannot say that the trial court's conclusion that the child was a CHINS is plainly wrong or without evidence to support it.

---

[5]

> Foster care services are the provision of a full range of casework, treatment and community services, . . . for a planned period of time to a child who is . . . in need of services as defined in § 16.1-228 and his family when the child . . . (iii) has been committed or entrusted to a local board or licensed child placing agency.

Code § 63.2-905.

III. FOSTER CARE PLAN WITH THE GOAL OF ADOPTION

Roberts-Bond next argues that the trial court erred in approving the foster care plan with the goal of adoption. She contends that adoption is not in the child's best interests because of the therapist's testimony that terminating the child's relationship with Roberts-Bond would be detrimental to the child. We disagree.

"A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations . . . ." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 328, 746 S.E.2d 509, 525 (2013) (alteration in original) (quoting Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006)).

"When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests." Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004). "On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. "The trial court's determination of the child's best interests 'is a matter of discretion . . . , and unless plainly wrong or without evidence to support it, the court's decree must be affirmed.'" Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (alteration in original) (quoting Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996)).

"This Court has said that 'there is no simple, mechanical, "cut and dried" way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48, 764 S.E.2d 284, 291 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). In determining what is in the best interests of the child, a court considers:

> the age and physical and mental condition of the child or children;
> the age and physical and mental condition of the parents; the
> relationship existing between each parent and each child; the needs
> of the child or children; the role which each parent has played, and

will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 582 (2004) (quoting Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986)). Although a court must examine these factors, "it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999) (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)).

Here, the trial court considered appropriate factors in making its decision. The court discussed Roberts-Bond's battle with sobriety and its effect on the child. The court found that there was still a "concern for loss of sobriety" because Roberts-Bond was self-treating her addiction, had cravings, and had only been living alone and without accountability for nine days. The court noted that Roberts-Bond's battle with substance abuse "has created significant instability" in the child's life; because of Roberts-Bond's substance abuse problems, the child had already been separated from Roberts-Bond four times since 2011.

The court also considered the child's mental condition and needs. Based on expert testimony, the court found that separation from *either* Roberts-Bond or the foster mother would be devastating and would cause emotional instability. The court found the stability and continuity needed by the child would be met by adoption, and not in the uncertainty that has characterized the child's custodial arrangement with Roberts-Bond.

Roberts-Bond argues that she had achieved sobriety and significantly improved her ability to cope with stress. Indeed, Roberts-Bond has made diligent and impressive efforts to achieve sobriety. However, "Virginia law recognizes the 'maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past.'" Toms v.

Hanover Dep't of Soc. Servs., 46 Va. App. 257, 267, 616 S.E.2d 765, 770 (2005) (quoting Petry v. Petry, 41 Va. App. 782, 793, 589 S.E.2d 458, 463 (2003)). Roberts-Bond has been sober eleven months, but she previously relapsed after being sober for sixteen months, and as mentioned above, the trial court found that there is a concern for loss of sobriety. While Roberts-Bond's efforts are commendable, there comes a point when a child needs to know that she has a permanent place to live and that she does not have to worry about whether she is going to be in the same home next month. See Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) ("It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a [custodian] will be capable of resuming h[er] responsibilities.").

"Given that the best interests of the child analysis is highly fact-sensitive and discretionary, overturning the circuit court's decision in a case such as this regarding the best interests of the child would necessarily require this Court to improperly substitute its judgment for that of the circuit court." Welch, 64 Va. App. at 49, 764 S.E.2d at 292. Because the trial court relied on appropriate factors and pointed to evidence supporting its decision, we cannot say that the evidence as to the best interests of the child, viewed in the light most favorable to HRSSD, was so overwhelming that this decision was "plainly wrong" or "without evidence to support it." Sullivan, 38 Va. App. at 783, 568 S.E.2d at 435.

## IV. CONCLUSION

Because the trial court found that the child needed foster care in order to receive the stability necessary to the child's condition, the circuit court did not err in concluding that the child was a child in need of services pursuant to Code § 16.1-228. Nor did the trial court err in

finding that the evidence demonstrated foster care with the goal of adoption was in the best interests of the child.  Accordingly, this Court affirms the judgment of the trial court.

<u>Affirmed.</u>