## Norfolk

MARGARET VELLETRI SCINALDI

v.

LOUIS J. SCINALDI

No. 1140-85

Decided August 5, 1986

572

COUNSEL

Carolyn L. Camardo (Smith and Tolerton, on brief), for appellant.

Glenn R. Croshaw (Pickett, Lyle, Siegel, Drescher and Croshaw, on brief), for appellee.

OPINION

**BARROW, J.**—This is an appeal of a final divorce decree enjoining a wife from moving her two children out of the Tidewater area of Virginia. The evidence does not support this injunction, and we reverse.

The dispute centers around Mrs. Scinaldi's decision to move with the children to New York where her family resides. Mr. Scinaldi and Mrs. Scinaldi are natives of New York and were married there in 1973. They moved to Virginia in 1979. They lived in Virginia Beach until they separated in July 1982 when the husband moved from the marital residence. Mrs. Scinaldi continued to live in Virginia Beach until she moved with the children, ages 8 and 3, back to New York in January 1985. Mr. Scinaldi then sought custody of the children or, alternatively, an order requiring Mrs. Scinaldi to keep the children in Virginia. The trial court allowed custody of the children to remain with Mrs. Scinaldi but directed her to return the children to Virginia Beach

and enjoined her from moving the residence of the children "from the Tidewater, Virginia area without further order of the court."

■ The standard of review in this proceeding is the same as in any other chancery matter. The report of a commissioner in chancery does not carry the weight of a jury's verdict, but it should be sustained unless the trial court concludes that the Commissioner's findings are not supported by the evidence. *Hill* v. *Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296 (1984). On appeal, a decree approving a commissioner's report must be affirmed unless plainly wrong. *Id.* at 577, 318 S.E.2d at 296.

■ The children's best interest is the criterion against which this decision must be measured. A court may forbid a custodial parent from removing a child from the state without the court's permission, *Carpenter* v. *Carpenter*, 220 Va. 299, 302, 257 S.E.2d 845, 848 (1979), or it may permit the child to be removed from the state. *Gray* v. *Gray*, 228 Va. 696, 698-99, 324 S.E.2d 677, 678 (1985); *Simmons* v. *Simmons*, 1 Va. App. 358, 364, 339 S.E.2d 198, 201 (1986). But in either instance the determination must be based on the "child's best interest." *Gray*, 228 Va. at 698, 324 S.E.2d at 678.

In this case the reasons for the injunction were explained by the Commissioner to whom the proceeding was referred. Relying on this explanation, the final decree provides that "it is in the best interest of the children to have maximum exposure to both parents and for such other reasons as are recited by the Commissioner in the record of the Commissioner's hearing all of which consider the best interests of the children." The reasons expressed by the Commissioner were:

The decision to remove the children from Virginia was not a mutual decision. . . . It was done by, in effect, self-help on the part of the mother for reasons which I'm sure she felt were good ones.

\* \* \*

[T]here is no doubt in my mind from the evidence that the father is devoted to the children. He visited them every single weekend when they were available to him in Virginia Beach.

* * *

It's a cruel thing to take the children away from one of the parents and remove them to another jurisdiction where visitation is impractical. The children are entitled to associate with both parents if that's reasonably practical.

* * *

[I]t's in the best interest of these children that they be allowed to associate with both parents . . . . They can't have two parents on a regular basis if the children are in New York. I haven't seen any real compelling reason why these children were taken away from the society of their father . . . . The mother . . . apparently . . . got back at her husband the only way she knew how since he refused to reconcile with her.

These findings do not address the best interest of the children even though they are couched in those terms. Instead, the findings address Mrs. Scinaldi's motivation for her move, Mr. Scinaldi's devotion to the children, and the problem of relating to the childen which all non-custodial parents face when living distant from their children.

The evidence also does not support the Commissioner's speculation that the wife "got back at her husband the only way she knew how [by moving to New York] since he was refusing to reconcile with her." She moved to New York because she was about to lose her home and her job in Virginia and she could live near family members in an apartment owned by her mother. Her home in Virginia Beach had to be sold under the terms of a separation agreement she had with her husband. The company for which she worked was expected to and soon did go bankrupt. Her only income, upon the loss of her job, would be $200 a month child support. For these reasons, she chose to return to New York.

Mrs. Scinaldi's recognition that reconciliation with her husband was unlikely may have combined with these other events to make her move to New York even more compelling. She now had one less reason to remain in her adopted state of residence. But there

was no evidence to support, and much to contradict, the Commissioner's speculation that she "got back at her husband the only way she knew how" by moving to New York.

■ The strength of Mr. Scinaldi's devotion to his children, although laudable, does not in itself determine the children's best interest. A parent's devotion is in a child's best interest only when expressed in a manner beneficial to the child. When considering whether a child may be moved away from a non-custodial parent, the question is whether the benefit is available to the child only if he or she lives in close proximity to the non-custodial parent. Thus, the issue is not whether Mr. Scinaldi is devoted to his children, but whether, instead, the benefit of the relationship can continue upon the children's move to New York.

A non-custodial parent always has an added difficulty in maintaining a relationship with a child when the child lives some distance away. Although the amount of time the parent may spend with the child can be balanced by using longer periods of visitation, the frequency of visitation will diminish and its costs will increase.

■ The added difficulty in maintaining the parental relationship is not unique to this case. It is common to all parents whose children live some distance away. This increased difficulty alone should not be allowed to deny a custodial parent the freedom to choose where he or she and the children will reside. To hold otherwise would give a non-custodial parent the option of chosing the residence of a custodial parent. Therefore, the added difficulty in maintaining a beneficial relationship between a child and a non-custodial parent should not be the sole basis for restricting a custodial parent's residence except where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent. There was no evidence that the benefits of Mr. Scinaldi's relationship with his children could not be maintained while they lived in New York.

There was other evidence reflecting on Mr. Scinaldi's relationship with his children: a social worker's observations of the children, Mr. Scinaldi's relationship with another woman, and the likelihood of Mr. Scinaldi moving out of the Tidewater area.

A licensed clinical social worker testified concerning the relationship of the father with his children. The social worker only saw the children on one occasion for a period of two hours while they visited with their father at a "MacDonald's" and at a park. He concluded that they appeared to have a healthy relationship and that the "maximum time that both parents can spend with the children would be beneficial." He did not suggest that "maximum time" with the children could not be accomplished through extended visitation instead of requiring that they live in the same community as the father. Thus, the social worker's comments offered no support for the ruling.

Evidence of the husband's relationship with another woman was introduced. A court order was required to prevent him from having overnight cohabitation with her while the children were visiting with him. The necessity for this order casts doubt on his sensitivity to his children's well being.

Evidence of the husband's awareness of his own mobility was also introduced. During the course of negotiating a separation agreement, the husband anticipated that his employer might transfer him outside of Tidewater Virginia, and he included a visitation provision to accomodate such a transfer. The husband's vulnerability to transfer out of the area suggests that he may have to live distant from his children for other reasons.

Missing from the record is any significant evidence of the children's development in school or in the environment in which they resided. *See Carpenter*, 220 Va. at 302, 257 S.E.2d at 848. Except for brief remarks by the wife concerning the older child's progress in school and by the husband concerning the wife's family and the neighborhood in which they lived, there was no evidence from which a court could determine the effect of this move on the children's social and educational development.

This ommission is understandable. The younger child was not yet in school, and the children had to leave the marital home anyway since it had to be sold. The move to New York would bring no more change to the children's education and environment than would occur if they stayed in Virginia Beach.

We conclude that the evidence does not support the Commissioner's findings that it was in the best interest of the children that

they reside in Tidewater Virginia, and, in turn, that the trial court was wrong in adopting the Commissioner's finding. Therefore, the order enjoining Mrs. Scinaldi from moving her two children from Virginia is reversed.

*Reversed.*

Baker, J., and Hodges, J., concurred.