## CIRCUIT COURT OF FAIRFAX COUNTY

Frank J. Frysiek

 v.

Carol A. Frysiek

January 4, 2005

Case No. (Chancery) 166423

BY JUDGE R. TERRENCE NEY

This matter came before the Court on December 16, 2003, pursuant to Complainant Frank J. Frysiek's ("Husband") Petition to Enjoin Defendant Carol A. Frysiek ("Wife") from removing their minor child to West Virginia and for a Change in Legal and Physical Custody and also upon Wife's Petition for a Change in the Visitation Schedule.

After a day and a half of trial on December 16 and 17, 2003, the parties settled the case. A Final Order reserving each party's right to seek attorney's fees was entered February 17, 2004.

Both Husband and Wife now request attorney's fees and costs.

*Facts*

Wife made plans to relocate with the parties' eight year old child to West Virginia in order to accept an offer of full time employment there. In May or June of 2003, she began praying with the child asking that God manifest to both her and the child God's wish that they move to West Virginia. She testified that such a manifestation occurred.

In mid-August, Wife told Husband of her plan to move to West Virginia. Despite Husband's requests to discuss the matter, Wife refused to do so or ever consider Husband's views as to her decision to relocate with their child.

As a result, Husband brought this lawsuit seeking sole legal and physical custody of the child.

On December 16, 2003, the case went to trial. On December 17, 2003, after further testimony, the parties settled the matter. The parties agreed that the child would stay in Northern Virginia and that Husband's time with the child would be increased to a full 50%. The Court entered the Custody Order to that effect on February 17, 2004.

## Analysis

Husband argues that Wife caused this totally unnecessary litigation by planning to relocate with the child for, at best, spurious, and, at worst, disingenuous reasons, and, as a result, Husband is entitled to attorney's fees.

Wife initially contended that Husband was not a "prevailing party" and hence not entitled to attorney's fees because, given the settlement, neither party in fact prevailed. Wife now principally argues that Husband's clearly superior financial situation warrants an award of attorney's fees and costs to her.

Wife also alleges bad conduct by Husband. She blames his counsel for tardiness of approximately fifty minutes in arriving at the deposition of Husband. Husband's counsel disputes that assertion and points out that he was required to spend an entire day in West Virginia as a result of Wife's counsel's refusal to cooperate in scheduling depositions there. Such disputes aside, the focus of the Court must be on the legitimacy of the litigation as opposed to underlying inappropriate or unfortunate behavior of counsel.

## Prevailing Party

The Supreme Court of Virginia has stated that:

> The general rule in this Commonwealth is that, in the absence of a provision in a statute, rule, or contract to the contrary, a trial court may not award attorney's fees to a party merely on the basis of that party's having prevailed upon an issue or cause. This is the so-called "American Rule," and its purpose is to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party.

*Tonti v. Akbari*, 262 Va. 681, 685, 553 S.E.2d 769, 771 (2001).

Absent a statute, rule, or contractual provision providing for an award of attorney's fees, they will not generally be awarded simply because a party has prevailed in litigation. *Id.* Notwithstanding, in domestic cases, this Court has statutory authority to award attorney's fees as "equity and justice may require." Va. Code § 20-99 (2004). Section 20-99 does not require that a party be a "prevailing party" in order to be eligible for attorney's fees.

Each case presents its own unique set of equities. *Kane v. Szymczak*, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003). In determining whether to award attorney's fees, there are no inflexible rules. *Id.* The focus instead is on "reasonableness under all the circumstances." *Kane v. Szymczak*, 41 Va. App. 365, 585 S.E.2d 349 (2003), citing *Joynes v. Payne*, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001).

A court must exercise its discretion and weigh all circumstances in determining whether either party should be awarded attorney's fees. Two factors often used by courts in determining whether attorney's fees should be awarded in domestic relations cases are (1) bad faith causing unnecessary litigation[1] and (2) financial disparity between the parties. *See e.g., Thomas v. Thomas*, 217 Va. 502, 229 S.E.2d 887 (1976).

## Bad Faith

Each party accuses the other of bad faith by causing unnecessary litigation.

Virginia Courts have awarded attorney's fees in domestic cases where one party's conduct compounded the costs of litigation. *See e.g., Smith v. Smith*, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004) (the Court of Appeals affirmed the trial court's award of fees because the husband breached his auction agreement and misrepresented his refinancing efforts to the trial court). Husband claims that Wife's misconduct unnecessarily caused this litigation. Wife asserts that she had a good faith basis for her decision to move with the child to West Virginia.

Wife relies primarily on *Scinaldi v. Scinaldi*, 2 Va. App. 571, 347 S.E.2d 149 (1986), to justify her decision to relocate with the parties' child. In *Scinaldi*, the Court of Appeals reversed the trial court's ruling which enjoined the wife from moving with her two children from Virginia to New York, where her family resided. 2 Va. App. 571 at 577, 347 S.E.2d 149 at 152. The Court of Appeals stated that "the children's best interest is the criterion against

---

[1] *See, e.g., Northcutt v. Northcutt*, 39 Va. App. 192, 571 S.E.2d 912 (2002); *Brooks v. Brooks*, 27 Va. App. 314, 498 S.E.2d 461 (1998).

which a change in residence must be measured; a court may forbid a custodial parent from removing a child from the state without the court's permission, or it may permit the child to be removed from the state, but in either instance the determination must be based on the child's best interest." *Scinaldi*, 2 Va. App. at 573, 347 S.E.2d at 150. In *Scinaldi*, the wife moved to New York because she was about to lose her home and her job in Virginia. In New York, she could live near family members in an apartment owned by her mother. 2 Va. App. at 574, 347 S.E.2d at 151.

The Court explicitly noted that "missing from the record is any significant evidence of the children's development in school or in the environment in which they resided." 2 Va. App. at 576, 347 S.E.2d at 152. In fact, the younger child was not yet attending school, and the children had to leave the marital home anyway, as it was to be sold. *Id.* Therefore, the Court determined that "the move to New York would bring no more change to the children's education and environment than would occur if they stayed in Virginia Beach" *Id.* In short, the wife had a good faith reason to move from Virginia to New York, and the children's lives would not be disrupted and the quality of their education would not be diminished. Based on these findings, the Court of Appeals reversed the trial court's ruling that prohibited the wife from moving with her two children from Virginia. *Scinaldi*, 2 Va. App. at 577, 347 S.E.2d at 152.

Unlike *Scinaldi*, the evidence presented by the Husband here strongly suggested that Wife did not have a good faith basis for relocating with the parties' child or that Wife's intended relocation was in the child's best interest.

First, Wife's claim that she was required to move to West Virginia to keep her job was questionable. At her deposition, Wife stated that she was required to move to West Virginia in order to maintain her employment (as a financial manager for Vision Appalachia and Appalachian Community) and that, if she did not move, she would suffer a significant decrease in income. Wife produced a letter which purportedly established that she was required to move to West Virginia in order to keep her job. Wife testified, under oath, that the letter was written by the Executive Director of Vision Appalachia. Later, a letter from Wife's counsel characterized this testimony by the Wife as being "in error," and admitted that Wife in fact was the author of the letter.

Second, the school in Philipi, West Virginia, in which Wife intended to enroll the child, was plainly inferior to the Loudoun County public schools attended by the child in Virginia. The Wife planned for the parties' child to attend Feed My Sheep Christian School in West Virginia. The evidence showed that the school was unaccredited, that more than half of the teachers at

the school were unaccredited, that the teachers were paid significantly less than teachers at neighboring schools, and that the school had limited space, no playground, or even a library. The evidence regarding the quality of Feed My Sheep was introduced through a *de bene esse* deposition of Sharon Arnett, Feed My Sheep's principal. The deposition was taken by *Wife's counsel*. Her own evidence, in effect, demonstrated the failings of Feed My Sheep school.

The Court recognizes, of course, that the Wife never presented her case in full. Notwithstanding, all of the Husband's witnesses were subjected to trenchant cross-examination by Wife's counsel. Additionally, the Wife was called as an adverse witness and on both direct and cross-examination availed herself of ample opportunities to present her view of the dispute. Her testimony was, in most respects, unpersuasive concerning all of the essential matters in controversy, her efforts to manipulate her eight year old child's thinking, her pretextual basis for the necessity of moving to West Virginia, the plain inferiority of the school in Philipi compared to the Loudoun County Public Schools, and the marked difference in the quality of life and services available between Philipi, West Virginia, and Great Falls, Virginia.

In short, in over a day and a half of testimony and evidence, no good reason was shown for the Wife's moving with the child to West Virginia. Doing so would have reduced the quality of education and the standard of living the child was enjoying in Virginia. Simply put, Wife had no good faith basis for relocating with the child.

Because this litigation was plainly necessitated by Wife's attempts to groundlessly relocate the child to West Virginia in clear violation of the parties' Property Settlement Agreement and, also, without any effort to even discuss the intended relocation with Husband, an award of attorney's fees to Husband would otherwise seem proper. Notwithstanding, the analysis does not end there.

### Financial Disparity between the Parties

Financial disparity between the parties is always a factor to be considered in determining whether to award attorney's fees in domestic relations cases. *Poliquin v. Poliquin,* 12 Va. App. 676, 406 S.E.2d 401 (1991); *Thomas v. Thomas,* 217 Va. 502, 229 S.E.2d 887 (1976). Even so, Virginia courts have not always awarded attorney's fees even where a large difference in the parties' incomes may have existed.

For example, in *Artis v. Artis*, 4 Va. App. 132, 354 S.E.2d 812 (1987), the Court of Appeals affirmed the trial court's finding that the wife had ample resources to pay her own attorney's fees even though the husband's gross monthly income was $5,286, the wife's income was $1,560, and the wife was receiving spousal support.

In *Luczkovich v. Luczkovich*, 26 Va. App. 702, 717, 496 S.E.2d 157, 164 (1998), the wife appealed the trial court's failure to award her attorney's fees and costs, arguing that the disparity in the parties' incomes required reversal. The Court of Appeals ruled, however, that "the trial court gave 'careful consideration' to the question of attorney's fees and found that an award of fees was not justified" and refused to hold that the court abused its discretion in declining to award attorney's fees. *Id.*

Both *Artis* and *Luczkovich* demonstrate that financial disparity between the parties *without more* is not in and of itself a sufficient basis for an award of attorney's fees. The trial court must consider all of the circumstances of each case.

Although it is clear here that Wife receives considerably less income than Husband,[2] that factor alone does not in and of itself justify an award of attorney's fees to her.[3] Wife's bad conduct which resulted in this litigation negates any reason for an award of attorney's fees to which she might otherwise be entitled given the financial disparity between the parties. Furthermore, the evidence demonstrated that the Wife has sufficient resources with which to pay her own attorney's fees.

*Conclusion*

Although both parties allege that the other's bad faith unnecessarily caused this litigation, the evidence demonstrates that Wife bears the primary blame for its genesis and prolixity. Notwithstanding, the Husband has far greater resources than the Wife. Given that, he cannot be awarded attorney's fees, notwithstanding his total blamelessness in this dispute, when the

---

[2] Wife receives approximately $4,108 per month in income. Husband receives approximately $20,000 per month in income. Husband pays Wife $1,130 in spousal support.

[3] In *Theismann v. Theismann*, 22 Va. App. 557, 574, 471 S.E.2d 809, 817 (1996), the Court of Appeals affirmed the trial court's award of attorney's fees to the wife on the grounds that the husband was in a clearly superior financial position *and* his infidelity caused the dissolution of the marriage. Financial disparity standing alone may dictate an award of fees. Yet, where other factors are present, it is not the only determinant that may be considered as to whether to award attorney's fees.

economic factors are considered. Given also that Wife has sufficient resources to pay her own attorney's fees, and, more importantly, given her behavior in fomenting this litigation, the Court declines to award attorney's fees to her as well.