## CIRCUIT COURT OF THE CITY OF SALEM

Larry Don Ramsey

    v.

Jean Marie Ramsey Harvey

May 7, 2008

Case No. CL07-329

BY JUDGE ROBERT P. DOHERTY, JR.

    Joint legal custody was granted as a result of the divorce. Mother obtained physical custody of the three children and father received visitation rights. Mother recently lost her job as a real estate agent because of the depressed real estate market. She now seeks to relocate to Arizona where she has family with whom she and the children will temporarily live and who will assist her in providing day care while she works. Mother has also obtained a job in Arizona selling new cars at a dealership. Father objects to the relocation, claiming that such a move will make it almost impossible for him to visit with the children frequently because of his financial situation. He argues that relocation will not be in the best interest of the children because it will harm the close bond and the loving relationship he has with them.

    Mother contends that Father is an irresponsible, argumentative, and contentious ne'er do well, who puts his interests before those of the children; that he subjects them to his alcohol and marijuana use, as well as the marijuana use of others; that he routinely takes the children to construction sites at which he works; that he visits with the children at his convenience, not always when scheduled and not always with all of the children at the same time; that he frequently does not return the children at appropriate times and sometimes not even on the appropriate day; that he has at various times caused the children to be absent from, and tardy to, school; that he does not now, and

has not historically, provided the court ordered support for the children, even when they find themselves in necessitous circumstances; and that he has to be forced to pay child support under threat of incarceration after more than once going for a year or more in between payments. Mother believes that moving to Arizona will allow her to earn a reasonable living, provide for the children and herself, stabilize their lives, and give her reliable assistance from family members to help care for the children during times when she is at work. Nothing that Mother testified to concerning Father was complimentary.

The Court had the opportunity to observe and consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testified, their interest in the outcome of the case, their bias and their prior inconsistent statements, and whether they have knowingly testified untruthfully as to any material fact in this case. In all instances where there was a conflict in the testimony between Father and Mother or Mother's witnesses, the Court believed Mother and her witnesses. Father's testimony was self-serving, misleading, evasive, and full of half-truths and false assertions. In short, he lied. When caught in apparent lies or half-truths, he gave alibis and tried to justify his actions by blaming others. This case will be decided mainly on the evidence given on behalf of Mother. The independent analysis and report of the children's *guardian ad litem* and his unique perspective has been very helpful, although it does not control the Court's decision in this case.

### Relocation

The formula to be used when deciding a custody relocation case requires the Court to make specific factual findings in three areas. "[T]he court must find: (1) a material change in circumstances since the prior decree; and, (2) that relocation would be in the children's best interest." *Wheeler v. Wheeler*, 42 Va. App. 282, 288 (2004), quoting from *Bostic v. Bostic-Bennett*, 23 Va. App. 527, 535 (1996). See also § 20-124.3, Code of Virginia (1950), as amended, for the factors to be considered by the Court when determining the best interests of the child. In addition, (3) the relocation must not substantially impair the beneficial relationship between the child and the non-custodial parent. *Scinaldi v. Scinaldi*, 2 Va. App. 571, 575 (1986), and *Sullivan v. Knick*, 38 Va. App. 773, 783 (2002). If all three of these elements are established by the party seeking to remove the children from the state, relocation will be granted. If not, the request to relocate the children to another state will be denied.

*Material Change in Circumstances*

Unless a material change in circumstances occurs, no reason exists to alter a custody decision. *Hughes v. Gentry*, 18 Va. App. 318, 321 (1994). *Res judicata* prevents the Court from trying the same custody case over and over again. Only when something major occurs that affects the life of the children, will the Court reconsider its earlier custody decision. When determining whether such a major event or material change in circumstances has occurred, the Court makes a factual determination based on all of the evidence presented. Changed circumstances is viewed as a broad concept that encompasses all aspects of the child's life, including both positive and negative developments and frequently including potential changes in the lives of their parents. *Keel v. Keel*, 225 Va. 606, 611-12 (1983).

Since the last custody order, because of the serious downturn in the real estate market, Mother has lost her job as a real estate agent. Father has repeatedly failed to provide child support. Mother has sold her home in anticipation of moving to Arizona with the children. Mother and children are now living in temporary quarters. Mother has been doing temporary construction work to provide for the daily food, clothing, and shelter needs of her and the children. Mother has a good job offer in Arizona, where she has family who will assist her in providing reliable care for the children while she works. This new job will include health insurance for the children and for Mother, which none of them have had recently. Both Mother and Father have been remarried, Mother having since divorced her most recent husband and Father having now separated from his most recent wife. Father is newly employed as an apartment maintenance worker, but ceased receiving income from his job because of an injury, although he still continues to repossess cars and conduct a construction business on the side. Father has purchased and maintains a vacation home with a partner on Smith Mountain Lake, but has had to sell at least one boat to pay his child support arrears last fall. Father either was, or is, being evicted from his rented residence and is currently in arrears in his rent and has had new judgments entered against him.

These are major developments that will have a serious impact on the lives of both the children and their parents. They sufficiently change the circumstances surrounding all of the parties affected by this litigation to the point that the principles of *res judicata* no longer come into play. Material changes in circumstances have been proven, and the Court is free to reexamine and reconsider its prior custody decision.

*Best Interest of the Children*

A relocation case is nothing more than a custody case where the primary caretaker is asking for the authority to move the children to a different state. That determination is based on whether or not the move is in the best interest of the children. *Stockdale v. Stockdale*, 33 Va. App. 179, 183 (2000). When deciding what is in the best interest of the children, the Court is required to consider those factors set forth in Va. Code § 20-124.3. In this case, the Court very carefully thought through and evaluated the exhibits and testimony of all of the witnesses when considering these factors, although much less weight was given to Father's evidence than was given to Mother's evidence for the reasons earlier given.

In addition to the matters already mentioned, the Court finds that the allegations of Mother and her witnesses are the actual facts of this case. The Court further finds that not only should the physical and emotional needs of the children be considered, but also a consideration of the stability of their lives as it relates to financial matters is critical. At this moment, the children are living with their mother in temporary housing, and she is performing odd construction jobs to provide food, clothing, and shelter for them. Father is not a responsible person. He is either not willing, not capable, or not mature enough to provide the necessary and regular childcare that is required so that Mother can be fully employed and be financially able to support herself and the children. Any financial help that comes from Father has to be forced from him under threat of incarceration. Support money is not paid in a timely manner and cannot be counted on to pay a portion of the costs of the children's necessary living expenses. Father's child support payments are erratic and uncertain. He holds his own personal interest above the interests of the children, as partially evidenced by his acquisition of a vacation home at the lake and a boat or boats and his purchase of alcohol and drugs before setting funds aside to provide for his children. He also visits with the children and returns them at irregular times. His contact with the children is for his benefit alone. He loves them, enjoys being around them, and likes to show them off. The children enjoy being around him. But they deserve more.

Father does not cooperate with Mother or try to resolve disputes regarding matters affecting the children. He handles the concerns of Mother regarding visitation, school, and the legitimate needs of the children by lying, bullying, arguing, or simply ignoring her. Mother is not perfect, but at least she has tried in the past, and has plans for the future, to stabilize the children's lives and give them a home. The home that she has planned includes the assistance of her sister and other family members being nearby so that they

can step in during emergency situations and care for the children while Mother works. She has formed a well thought out strategy that will enable her to provide financially for the children and herself and that will include health insurance for all of them.

The best interest of the children seems to be the main concern of Mother, while Father's chief aim seems to be to do what is in the best interest of Father. He enjoys having the children around when it suits him. He does not provide much for them, financially or otherwise. He routinely takes them to construction sites where he conducts his part time business, and on at least one occasion he took them to, and remained at, a construction site where marijuana was being smoked. He does not assist Mother with the care of the children, except as a by-product when one of his visitations happens to allow her to work or attend to other necessary chores. Except for being a part-time father, available to have fun with the children when it is convenient, his past history and his present attitude do not indicate that he has the ability to care for the children day in and day out on a full-time basis. It is the Court's opinion that, because of his egocentric view of life, Father, despite loving his children, cannot accurately assess nor meet their emotional, intellectual, and physical needs. The children also love their Mother and she loves them. They have lived with her their entire lives. Their only hope for a full time parent is with their Mother, and, because neither Father or Mother have relatives who live in this part of the country, a relocation to Arizona where she has relatives willing and able to help her with the children is a reasonable plan for Mother to consider in the care and raising of these children.

These children are ages 10, 12, and 14. The youngest wants to move to Arizona to be near her cousin. The other two have friends in this area and would prefer not to move. The children are still young enough to require adult supervision, something not available on a full time basis in the Roanoke Valley if Mother is forced to be their sole financial provider, as the circumstances of this case indicate will continue into the future. The after school and weekend activities and sports programs that should be available to these children will not be readily available to them without the presence of a responsible adult. Unless the move occurs so that Mother's relatives are available, the children will have to do without these benefits. But for the love the children have for Father, and he for them, and except for the fun they have visiting him, Father is not anticipated to be a positive force in their life. From him, they learn irresponsibility and that alcohol and marijuana are acceptable; that arguing with, and ignoring Mother's legitimate concerns, is proper; and that arriving late for school and avoiding obligations, although not encouraged, is certainly not frowned upon. The children will survive to

adulthood without the relocation to Arizona, but they will not do it well. Although no guarantee exists, the best chance these children have to enjoy their extended family, the normal amenities available to others of their age, and the socialization of youth clubs, community organizations, and sporting activities, is with the proposed relocation to Arizona. That anticipated move is in the best interest of the children.

### Impaired Relationship of Father and Children

The children and Father have developed a loving bond over the years. They enjoy being in each other's company. A relocation of the children to another state would be prohibited if such a move substantially impaired the beneficial relationship or seriously harmed the bond that exists between Father and the children. If that occurred, the move would not be in their best interest. *Scinaldi* at 575, followed in *Surles v. Mayer*, 48 Va. App. 146 (2006). The question is not whether visitation would be less frequent and more expensive if the children are allowed to move to Arizona with their Mother. If that were the only matter to consider, no one would ever be allowed to relocate to another state with children and the non-custodial parent would routinely be able to dictate where the custodial parent lived because visitation would always be more difficult. The real issue to consider, keeping in mind that the best interest of the children is paramount, is not whether the beneficial relationship between the non-custodial parent and the children will be inconvenienced or impaired in some way. The actual question is whether the relationship and the bond that has developed between the non-custodial parent and the children will be seriously harmed or substantially impaired. In this case, the answer is emphatically no, it will not be seriously harmed or substantially impaired. The bond between Father and children and the love they have for each other is too strong to be broken or seriously damaged. *Wheeler v. Wheeler*, 42 Va. App. 282, 295 (2004). Their relationship will survive well and without substantial impairment, although longer, albeit less frequent, visitations will be required. The beneficial relationship and loving bond between Father and the children is not an impediment to a custodial relocation to Arizona.

### Relocation Conclusion

Accordingly, having found that changed circumstances exist, that relocation would be in the best interest of the children, and that their move to another state would not substantially impair the relationship Father and the

children have with each other, the Court will approve and authorize Mother's relocation to Arizona with the children. School will end in a few weeks, so the move to Arizona should not occur until summer vacation. Additionally, as set forth above, visitation will have to be adjusted.

*Visitation*

When deciding the visitation issue, the Court is aware that relocation is necessitated in large part because of Father's irresponsibility, his refusal to provide child support when needed, and his inability, whether intentional or otherwise, to assist with necessary childcare. That sort of behavior should not be rewarded. The cost of visitation should not be viewed as a penalty or sanction against Mother simply because she is the one who asked to move to another state with the children.

Visitation for the summer of 2008 shall occur in Arizona. That way the children's move will not be interrupted and they can settle into their new home before starting school in the fall. Father will be able to enjoy a vacation of his own, and he will be able to see the new surroundings firsthand. Mother shall reimburse Father one-half of his air, train, or bus round-trip ticket when he first meets with or picks up the children in Arizona. Because of the short notice, Father shall determine when this visitation will occur and for how long. That visitation shall not exceed one-half of the summer visitation and can be overnight, day visits, or a combination thereof, as determined by Father. Reasonable notice of the terms of this year's summer visit shall be given to Mother.

In future years, Father shall have the first half of each summer to visit with the children, a Christmas visit from December 26 through January 1, and the Spring or Easter Break, whenever that is scheduled by the Arizona school system. These dates for visitation also include the children's travel time. If Father chooses to visit with the children in Virginia, he shall deliver one-half of the cost of their airplane fare to Mother, at least ninety days in advance of the trip. If he chooses to visit with them in Arizona, the procedure and reimbursement plan outlined above shall control. The Court is deviating from the plan laid out by the *guardian ad litem* because to give all of the children's free time to Father, would deny Mother and the children the opportunity to also share summer vacation trips and activities.

In addition to these set visitations, if Mother makes a trip to Virginia with the children, reasonable notice should be given to the Father and arrangements made for him to have additional time with them. Other visitation

agreed upon by the parties is encouraged and should be paid for by the party requesting the same. Telephone and related contact between the children and Father should occur frequently. The Court will determine the details of any visitation that the parties are unable to agree upon.