# CIRCUIT COURT OF THE CITY OF ROANOKE

Doris C. Lingsch

v.

David M. Walker

December 3, 2013

Case Nos. CL13-1267, CL13-1268, CL13-1269,
CL13-1270, CL13-1271, and CL13-1272

BY JUDGE DAVID B. CARSON

This case is before the Court for a trial *de novo* on appeal from a final judgment of the Juvenile and Domestic Relations District Court of the City of Roanoke ("J&D Court") dated May 17, 2013.

*Background*

Doris C. Lingsch ("Mother") and David M. Walker ("Father") were divorced by a Decree entered in this Court on January 10, 2007. Two children, Grayson and Chase, were born of this marriage. Initially, Mother and Father were granted joint legal custody, but Mother received primary physical custody and Father received liberal visitation.

Sometime before August of 2008, Mother met her current husband, Robert Lingsch, who was working for Advance Auto in Roanoke. They were married in August of 2008. Together they have one daughter.

It is clear that, before her marriage to Mr. Lingsch, Mother (and presumably Mr. Lingsch) lived in Roanoke. Shortly before her marriage to Mr. Lingsch in August 2008, Mother at least contemplated moving with Mr. Lingsch to Ohio. She asked the J&D Court to modify Father's visitation to allow her to relocate to Ohio with Grayson and Chase. The J&D Court denied her motion. Mother appealed that decision, and Circuit Court Judge William Broadhurst similarly denied Mother's motion by an Order entered on August 19, 2008.

Since August 19, 2008, Advance Auto eliminated Mr. Lingsch's position in Roanoke. Though there was some dispute in the evidence about the net

effect of this employment "change," it is clear that, since Advance Auto eliminated his position in Roanoke, Mr. Lingsch accepted a position with Advance Auto that requires him to be in Ohio. Though the parties did not present evidence on the precise issue, I infer that Mother and Mr. Lingsch moved to Ohio with their daughter in either 2012 or 2013.

Since their move to Ohio, Mother again asked the J&D Court to modify Father's visitation so that she can retain primary physical custody of Grayson and Chase at her new home in Ohio. Father opposed Mother's motion. By an Order entered on May 17, 2013, the J&D Court denied Mother's motion and awarded primary physical custody to Father in Roanoke. Mother has timely appealed that decision, which is what brings the parties to this Court.

## Current Proceedings

This Court heard evidence and final arguments on November 19, 2013. Both parties were present throughout the proceedings, together with their attorneys. The Plaintiff introduced a total of thirteen exhibits, including the report of a neutral custody assessment prepared by Dr. Michael Chiglinsky. The Defendant introduced a total of nineteen exhibits, including a neutral custody assessment prepared by Dr. Michael Chiglinsky. Finally, the Court conducted a brief *in camera* discussion with Grayson and Chase.

Mother is asking this Court to retain primary physical custody of Grayson and Chase and to modify Father's visitation consistent with her relocation to Ohio.

Father is asking this Court for primary physical custody of Grayson and Chase because mother has relocated to Ohio.

Neither Mother nor Father has asked for a change in the legal custody of the children, and this Court sees no reason to alter the earlier determination that Mother and Father are granted joint legal custody of Grayson and Chase.

Similarly, by agreement, this Court will only address the physical custody issue and not visitation. If, after reviewing this opinion, the parties are able to reach an agreement on visitation, then this Court would be inclined to endorse any such agreement. However, if the parties are unable to reach an agreement on visitation, then we will reconvene for further proceedings on the visitation issue.

## Analysis

When deciding a custody relocation case, the Court must make specific factual findings in three areas. The Court must find: (1) a material change in circumstances since the prior decree; (2) that relocation would be in the children's best interest, *Wheeler v. Wheeler*, 42 Va. App. 282, 288, 591 S.E.2d 698, 701 (2004), quoting from *Bostick v. Bostick-Bennett*, 23 Va. App. 527, 535, 478 S.E.2d 319, 323 (1996); and (3) that the

relocation not substantially impair the beneficial relationship between the children and the noncustodial parent. *Scinaldi v. Scinaldi*, 2 Va. App. 571, 575, 347 S.E.2d 149, 151 (1996); *Sullivan v. Knick*, 38 Va. App. 773, 783, 586 S.E.2d 430, 435 (2002). If all three of these elements are established by the party seeking to remove the children from the state, the Court will grant relocation. If not, the Court will deny the request to relocate the children to another state.

In this case, Mother is seeking to relocate Grayson and Chase to Ohio, so the burden of proof with respect to the three elements above rests with Mother.

### A. *Material Change in Circumstances*

This is a close call. In particular, the prior Decree at issue was entered on August 19, 2008. Mother alleges that since entry of that Decree, Advance Auto eliminated her new husband's position in Roanoke, but offered him the same or similar position in Ohio. So, Mother claims that the material change in circumstances is that, in order for her new husband to keep his job, they had to move to Ohio.

Father has done an effective job of pointing out that, before entry of the 2008 Decree, Mother had taken affirmative steps to at least establish herself in Ohio. (See Defendant's Exhibit 17.) Father's evidence falls short of establishing that Mother had in fact relocated to Ohio prior to the entry of the 2008 Decree, but I appreciate that, for several years before the "material change," Mother (and presumably Mr. Lingsch) had an expressed desire to relocate to Ohio.

Ultimately, it is unrefuted that Advance Auto eliminated Mr. Lingsch's position in Roanoke since entry of the 2008 Decree, so the Court concludes that Mother has carried her burden of proving that there has been a material change in circumstances since entry of the prior Decree.

### B. *Best Interests of the Children*

Judge (now Justice) Koontz ably described a situation that is analogous to the one before this Court when he wrote as follows:

> The case is rare in which the removal of children from their noncustodial parent's [place] of residency does not result in some detriment. A child's development is best facilitated in an atmosphere of stability, love, and concern. This is especially true when that love and concern flows from both parents. Oftentimes, the removal of children from the [place] of residency of one of those parents makes it more difficult for the absent parent to express and demonstrate such love and concern. The relationship between parent and a developing child, no matter how close, affectionate, or demonstrative,

naturally suffers as the distance between the two increases. As such, questions of custody and removal from the noncustodial parent's [place] of residency involve a balancing of interests. More often than not there are advantages and detriments on both sides of the issue. A trial court's role is to weigh those concerns and conscientiously seek the solution that serves the best interest of the children.

*Simmons v. Simmons*, 1 Va. App. 358, 364, 339 S.E.2d 198, 201 (1986).

In trying to assess what is in the best interests of Grayson and Chase in this case, I am required to consider the factors set forth in Va. Code § 20-124.3, which I have done. While considering the statutory factors, I have carefully reviewed, thought through, and evaluated the numerous exhibits as well as the testimony that was both proffered and presented. With one exception, I must admit that I gave little weight to the custody assessment reports prepared by Dr. Chiglinsky, which I did not find particularly helpful. The prominent exception is Dr. Chiglinsky's opinion with respect to Mother in which he states, *inter alia*, that, "[her] perspectives on her ex-husband are of such a negative nature that they may preclude developing an effective and stable co-parenting plan."

After considering and evaluating all of the factors set forth in Va. Code § 20-124.3, I once again find this to be a very close call. Both Mother and Father are loving and devoted parents. Roanoke is the only home that Grayson and Chase have ever known. As such, they have developed relationships within the Roanoke community at school, church, and through their extracurricular activities, such as their involvement with Boy Scouts, that would be difficult, if not impossible, to replicate in a new setting. I find that Father's parents have been intimately involved in the lives of Grayson and Chase. Finally, I find that both boys come across as happy and well-adjusted in their surroundings, which almost exclusively consist of their ties to Roanoke.

Ultimately, the Court concludes that it is in the best interests of Grayson and Chase to remain primarily in the only home and community they have ever known. At the very least, the Court finds that Mother has not carried her burden of proving that relocating the boys to Ohio is in their best interests.

## C. *Relationship Between Children and Non-Custodial Parent*

The evidence and exhibits make it clear that Father and his sons have developed a loving bond over the years. They enjoy being in each other's company, and it is clear that Father is actively involved in their lives and activities.

Though of no relevance to this particular point, it is worth noting that everything I have noted with respect to the relationship between Father and

sons has at least equal applicability with respect to the relationship between Mother and sons.

I have no doubt that, if Grayson and Chase relocated to Ohio, that this would impair their relationship between them and their Father. The question, however, is whether such a move would substantially impair the relationship. *Scinaldi v. Scinaldi*, 2 Va. App. 571, 575, 347 S.E.2d 149, 151 (1986), followed in *Surles v. Mayer*, 48 Va. App. 146, 176, 628 S.E.2d 563, 577 (2006). Coupled with Dr. Chiglinsky's conclusion about Mother's negative perspective of her ex-husband, relocating Grayson and Chase from the only home they have ever known to a spot not readily accessible, particularly for an individual who has been so involved in his children's lives, would substantially impair the relationship and bond that have developed between Father and his sons. At the very least, I find that Mother has not carried her burden of proving that relocating the boys to Ohio would not substantially impair the relationship between Father and his sons.

For all of the above reasons, the Court denies Mother's motion to retain primary physical custody of Grayson and Chase and to modify Father's visitation consistent with her relocation to Ohio. Instead, in light of Mother's relocation to Ohio, the Court holds that Father should have primary physical custody of Grayson and Chase.

With the above being said, Mother is an extremely important influence in her sons' lives and should be granted liberal, frequent, and extended visitation. As we discussed and agreed, I purposely have not reached any decision on visitation at this time so as to allow the parties to try and arrive. at a decision that works with their schedules. If the parties are unable to do so, then I will of course do so consistent with the feelings I have expressed above.