COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Decker and AtLee
Argued at Richmond, Virginia

UNPUBLISHED

CHRISTOPHER T. TAKACS

MEMORANDUM OPINION[*] BY
v.      Record No. 1021-15-2          JUDGE RANDOLPH A. BEALES
MARCH 22, 2016

HEATHER L. TAKACS

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

James F. Andrews (Johnson and Andrews, P.C., on brief), for
appellant.

No brief or argument for appellee.


On May 29, 2015, the circuit court entered a final decree of divorce between Christopher T.

Takacs (father) and Heather L. Takacs (mother). On appeal, father argues that the circuit court

"erred in approving [mother's] relocation of the parties' children to Ohio" and in refusing to order

her to return them to Virginia. Father also challenges the circuit court's decision to award mother

$13,000 in attorney's fees and costs in the final decree of divorce. For the following reasons, we

reverse and remand the matter to the circuit court for further proceedings consistent with this

opinion.

I. BACKGROUND

Under settled principles of appellate review, we view the evidence in the light most

favorable to mother, as the party prevailing below, Chretien v. Chretien, 53 Va. App. 200, 202, 670

S.E.2d 45, 46 (2008), and we grant to mother "all reasonable inferences fairly deducible therefrom,"

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).  So viewed, father and mother were married on March 29, 2004.  The parties had two children (the children) during the marriage, born in June 2004 and August 2007.  On August 28, 2011, father was badly injured and hospitalized following a serious car accident.  While father's health improved over time, he did suffer a traumatic brain injury.  At the time of the final hearing, father was taking medication for seizures and suffered from impaired vision in his left eye.

On December 18, 2013, wife filed a divorce complaint in the circuit court.  The parties officially separated on December 27, 2013.  During the separation, the parties agreed that mother would have primary physical custody of the children and that father would have visitation rights.  At the time of the separation, both parties resided in or around Petersburg, Virginia.  The circuit court held a *pendente lite* hearing on March 28, 2014 and subsequently entered an order on May 23, 2014, granting mother temporary physical custody of the children and awarding father supervised day visits in the presence of his parents.[1]

During the marriage, mother worked "as needed" at the John Randolph Medical Center in Hopewell as an x-ray technician.  At this position, mother earned $23 or $26 per hour – for day and evening shifts respectively.  In the months leading up to the final hearing, mother's employer began to reduce her hours of employment to the point where mother was only able to work about five days per month.  Mother began to look for full-time work in order to meet the financial needs of herself and the children.  Unable to find a full-time job in Virginia, mother sought out and received two job offers in Ohio.  Mother eventually accepted a full-time position making $23

---

[1] Code § 20-124.5 requires the trial court, as a condition for any custody or visitation order, to include a requirement "that thirty days' advance written notice be given to the court and the other party by any party intending to relocate."  While the temporary custody and visitation order did not contain this statutorily required language, father does not assign error on appeal to the circuit court's entry of that order.

per hour as a mammography and x-ray technician at a private imaging center in Springfield, Ohio. On February 8, 2015, mother moved to Ohio along with the children. Mother relocated the children out of state without notifying father or the court or seeking permission to do so from him or from the court.

At the final hearing four days later on February 12, 2015, the circuit court found that mother was the primary caregiver for the children and that father was "not in a position to assume the physical custody of the children" due to his medical condition. Based on those findings, the circuit court concluded that the best interests of the children would be served by awarding primary physical custody to mother in Ohio. The circuit court awarded the parties joint legal custody of the minor children, awarded mother primary physical custody, and decreed that father shall have reasonable and liberal visitation with the children "as agreed by the parties." The court also ordered father to pay $13,000 in attorney's fees and costs to mother within thirty days of the entry of the final decree.[2] A final decree of divorce was entered on May 29, 2015 on the grounds that the parties had lived separate and apart without any cohabitation and without interruption for more than one year.

## II. ANALYSIS

### A. RELOCATION OF THE CHILDREN

Father argues that the circuit court erred in approving mother's relocation of the children from Virginia to Ohio. In Judd v. Judd, 53 Va. App. 578, 673 S.E.2d 913 (2009), this Court held that a trial court may consider whether to permit relocation during the final hearing for divorce, equitable distribution, and child custody. Id. at 585, 673 S.E.2d at 916-17. "[I]n a court's decision as to the propriety of relocating the children, 'the welfare of the children is of primary

---

[2] Mother accumulated $26,404.63 in attorney's fees and costs during the suit for divorce. The circuit court ordered father to pay approximately half of mother's costs from this litigation.

and paramount importance.'" Parish v. Spaulding, 26 Va. App. 566, 572, 496 S.E.2d 91, 94 (1998) (quoting Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986)), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999); see Code § 20-124.3 (delineating the factors to be weighed in assessing the best interests of children in custody and visitation matters); see also Cloutier v. Queen, 35 Va. App. 413, 427, 430, 545 S.E.2d 574, 581, 582-83 (2001) (holding that the Code § 20-124.3 factors govern whether relocation is in a child's best interests and that the interests to be assessed are solely the child's and do not include the custodial parent's interests).

"[T]he added difficulty in maintaining a beneficial relationship between a child and a non-custodial parent should not be the sole basis for restricting a custodial parent's residence except where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent." Scinaldi v. Scinaldi, 2 Va. App. 571, 575, 347 S.E.2d 149, 151 (1986). The parent who wants to relocate the children bears the burden of proving that the relocation will not substantially impair the relationship between the children and the non-moving parent. Stockdale v. Stockdale, 33 Va. App. 179, 184, 532 S.E.2d 332, 335 (2000). The trial court's decision regarding the relocation of a custodial parent "is a matter of discretion," and on appeal, we will not reverse that decision "unless plainly wrong or without evidence to support it." Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (quoting Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996)).

The circuit court found that relocating the children to Ohio under the primary physical custody of mother "would be in the best interest of the children." In support of its conclusion, the circuit court found that mother was the primary caregiver for the children during the marriage and that father was "physically unable to care [for the children]." While actually never stated by the circuit court, the court had to have implicitly found that relocation would not substantially

impair the relationship between the children and father.[3]  We hold the evidence, even when

viewed in the light most favorable to mother, fails to support the circuit court's ruling.

The circuit court record contains numerous facts that unmistakably demonstrate that the

court's approval of mother's relocation to Ohio without a comprehensive, detailed court-ordered

visitation schedule was an abuse of discretion.  To begin, it appears from the record that the

circuit court relied on mother's testimony and representations from her counsel that "the parties

would be better off to try to work something out between themselves."[4]  In accepting mother's

position on visitation, the circuit court did not create a visitation schedule dictating a minimum

amount of visitation for father, did not establish where such visitation would take place, and did

not state which party was responsible for transporting the children and at whose expense.

Seemingly, the court relied on mother's testimony that she was "willing to do whatever it takes;

phone calls, visits" to keep the relationship between father and the children intact.  Mother also

testified that her new residence in Ohio was "not that far away" – despite also testifying that

travel between her home in Ohio and father's residence in Virginia requires an eight-hour drive.

Clearly, the circuit court's acceptance of mother's original purported agreement at the

February 12, 2015 hearing to considerable visitation opportunities for father does not amount to

an abuse of discretion by itself.  In this particular case, however, the record contains evidence

that the circuit court became aware prior to the entry of the final decree that mother's testimony

---

[3] The letter opinions of the circuit court dated March 10, 2015 and April 4, 2015 do not contain any findings on the issue of whether the relationship between the children and father would be substantially impaired by relocation of the children to Ohio.

[4] While each party's closing argument was not included in the appendix, it appears from the record that mother's trial counsel suggested that the circuit court award father "reasonable visitation as the parties agree."  In his closing argument, father's counsel warned the circuit court of the danger of leaving visitation to be set by the agreement of the parties.  Specifically, he argued that the court should set a fixed visitation schedule and that it would "have to be specific."

at trial that she was "willing to do whatever it takes" was either false or unworthy of belief. After the final hearing, father filed his objections to the circuit court's findings as an attachment to the final decree for divorce before it was entered. Those objections included emails that clearly demonstrate mother's total unwillingness to "do whatever it takes" to allow the children to maintain their relationship with father. In those emails, mother's trial counsel represented to father's counsel that mother would *only* agree to very specific terms for visitation. For example, by that point, mother asserted that father is "free to visit the children at any time in Ohio, with reasonable notice to [mother]." Mother also then only agreed to *one week* of visitation in Virginia per year. That week-long visitation would occur during the summer – with the children staying with their paternal grandparents – "so long as they provide transportation."

These emails were correspondence between counsel that occurred after the final hearing and the court's March 10, 2015 letter opinion – but *prior* to the entry of the final decree. Therefore, father's objections to the proposed final decree provided the circuit court with evidence of mother's hollow testimony at trial before the final decree had been signed by the circuit court. Because the court was aware – prior to the entry of the final decree – that mother had misrepresented her willingness to preserve the relationship between the children and their father after the court had originally given approval in its letter opinion to mother's relocation of the children to Ohio, we find that the court's failure to set forth a comprehensive visitation schedule while the matter was still before the circuit court was an abuse of discretion.

Numerous other facts in the record support the conclusion that the failure to set a specific visitation schedule substantially impaired the relationship between the children and father. The evidence before the circuit court was that the parties separated on December 27, 2013. During the separation, both parties – who resided in or around Petersburg – agreed that mother would have primary physical custody of the children and that father would have supervised visitation.

While the parties remained separated, father testified that he saw his children approximately once per week, or "50 or 55 times" per year. The evidence is undisputed at trial that mother moved to Ohio with the children without notifying the circuit court just four days prior to the final hearing.[5] The evidence was also clear that father received no advance notice of mother's removal of the children out of state, nor did he ever agree that mother could take the children to Ohio. Thus, the court's approval of mother's surreptitious relocation of the children out of state on the eve of trial and the court's decision to allow the parties to set their own visitation schedule thereafter left father at the mercy of mother regarding his ability to see his own children.

In addition, while mother testified that she has family support in Ohio, a review of all the evidence demonstrated that the majority of the children's closest relatives (parents and grandparents) reside in Virginia.[6] Furthermore, the evidence before the circuit court demonstrated that father was badly injured in a severe car accident in August 2011, which required an extended stay in the hospital. While the testimony was undisputed that father's health has improved over time, his involvement in the accident resulted in a traumatic brain injury. At the time of the final hearing, father was taking medication for seizures and suffered from impaired vision from an injury to the optic nerve of his left eye. Despite father's medical condition, mother's conduct after the final hearing demonstrated that she was unwilling to make any effort to substantially maintain the relationship between the children and their father. In summary, the totality of the evidence clearly shows that the circuit court's approval of mother's

---

[5] It also appears from the record that mother cancelled father's agreed visitation on Saturday, February 7, 2015. Mother testified at the final hearing that she moved the children to Ohio the following day. In his opening brief, father asserts that he has not seen his children since February 1, 2015.

[6] The evidence before the circuit court was that father, both paternal grandparents, and the maternal grandmother and her husband all live in Virginia. Mother's father and stepmother, her stepbrother and his wife, her brother and his wife, and her stepsister live in Ohio.

relocation of the children to Ohio, along with its conclusion that the parties should work out their own visitation, was plainly wrong because the visitation that resulted from the move substantially impairs the relationship between the children and their father.

For all of these reasons, we hold that the circuit court abused its discretion, we reverse the circuit court's ruling on relocation and visitation, and we remand the matter to the circuit court for reconsideration. On remand in the circuit court, the court must determine if mother has met her burden of demonstrating that the relocation will not substantially impair the relationship between the children and father, which the circuit court never specifically addressed. Stockdale, 33 Va. App. at 184, 532 S.E.2d at 335. If the circuit court concludes upon remand that it is in the best interests of the children to be relocated to Ohio, the court must order a visitation schedule that ensures that the relationship between father and the minor children is not substantially impaired – as required by Virginia case law governing relocation. See Judd, 53 Va. App. at 590, 673 S.E.2d at 918 (affirming trial court's approval of mother's relocation where the trial court established a detailed visitation schedule for the children and ordered the moving parent to be responsible for the cost of transporting the children to and from Virginia); Petry v. Petry, 41 Va. App. 782, 788, 589 S.E.2d 458, 461 (2003) (affirming the trial court's order for relocation where the trial judge granted the non-moving parent visitation one weekend a month in Lynchburg and made the moving parent responsible for transportation from New York to Lynchburg).

## B.  ATTORNEY'S FEES AND COSTS

Father argues that the circuit court's award of attorney's fees and costs to mother was unreasonable and not supported by the evidence. An award of attorney's fees and costs "is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987); see Joynes v.

- 8 -

Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001) ("The key to a proper award of counsel fees is reasonableness under all the circumstances.").

Even viewing the evidence in the light most favorable to mother, as we must since she was the prevailing party below, the totality of the evidence in the record demonstrates that the award of $13,000 in attorney's fees and costs to be paid in thirty days to mother was unreasonable under the facts and circumstances of this case. From the evidence at trial, the court determined that father's income was $42,425 per year and that mother's income was $3,833 per month or approximately $45,996 per year. However, in the same letter opinion in which the circuit court awarded mother a substantial sum of attorney's fees and costs, it also made a finding that father *did not have the ability to pay spousal support*. Logically, if the circuit court found appellant had no ability to pay monthly spousal support, father necessarily had no ability to pay wife considerably more money in attorney's fees. Furthermore, by requiring payment of those fees and costs *within thirty days*, the circuit court effectively and unreasonably ordered father – whom the court had already concluded had no ability to pay spousal support – to pay approximately 30% of his annual income to mother *in one month's time*. Thus, we find that the circuit court's order for father to pay half of mother's attorney's fees and costs within thirty days of the entry of the final decree was unreasonable and not based on father's actual ability to pay.

Finally, the circuit court, in its March 10, 2015 letter opinion, appears to have awarded attorney's fees because mother was "entitled to do reasonable discovery and litigation" regarding the ownership of the marital residence and the restaurant where father worked. The circuit court made this finding despite simultaneously concluding that mother's "ignorance of the family's business and financial affairs" was "somewhat unusual." The court also found that mother "continued to litigate this matter aggressively past the point where it had become apparent that any further attempt to prove that there was a marital interest in [the house] or [the restaurant] was

- 9 -

futile." When this matter was still before the circuit court, father argued that mother's use of discovery was unreasonable because she could easily obtain independently the information she sought regarding the ownership of the marital residence and the restaurant – without the need for costly discovery. In light of these facts, we must find that the circuit court's award of even half of mother's attorney's fees and costs was not supported by the evidence in the record.

In summary, the circuit court's decision to assess attorney's fees and costs against father, especially given the court's statements about mother's discovery tactics and "ignorance of the family's business and financial affairs," amounted to the adoption of a "'loser pays' rationale that has long been generally rejected in Virginia." See Mayer v. Corso-Mayer, 62 Va. App. 713, 734-35, 753 S.E.2d 263, 273 (2014). Therefore, the circuit court's award of attorney's fees and costs must be reversed because it was not reasonable "under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985). Upon remand, the circuit court is ordered to reconsider whether any award of attorney's fees would be reasonable under the facts of this case. If the circuit court should decide to award attorney's fees and costs to either party, the court shall enter an award for an appropriate amount of attorney's fees and costs based on the parties' actual ability to pay and order that any such fees and costs be paid on a reasonable schedule.

### III. Conclusion

For the foregoing reasons, we reverse the judgment of the circuit court and remand the matter for proceedings consistent with this opinion.

Reversed and remanded.